BEN ANDREWS, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

En. Banc.

Opinion filed March 12, 1930.

Petition for rehearing granted April 28, 1930.

Judgment reversed July 10, 1930.

*Ion L. Farris* and *E. M. Johns*, for Plaintiff in Error;

*Fred H. Davis*, Attorney General, and *Roy Campbell*, Assistant, for the State.

PER CURIAM.—In this cause Mr. Chief Justice TERRELL, Mr. Justice STRUM and Mr. Justice BROWN are of the opinion that the judgment of the Criminal Court of Record should be reversed, while Mr. Justice WHITFIELD, Mr. Justice ELLIS and Mr. Justice BUFORD are of the opinion that the said judgment should be affirmed. When it appears that the members of the court are permanently and equally divided in opinion as to whether a judgment should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the court, the judgment should be affirmed. Therefore, .it is considered, ordered and adjudged that the judgment of the Criminal Court of

Record in this cause be and the same is hereby affirmed on the authority of State ex rel. Hampton v. McClung, 47 Fla. 224, 37 So. R. 51.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.

ELLIS, J.—In October, 1928, Ben Andrews shot and killed Earl B. Dyal in Duval County, Florida. On the 25th day of December, 1928, an information was lodged against Andrews in the Criminal Court of Record charging him with murder in the second degree. Upon a plea of not guilty the accused was tried and convicted of manslaughter. He seeks the reversal of the judgment on writ of error.

One of the propositions of counsel for plaintiff in error, as we gather it from the brief, is that in view of the facts the accused was guilty of murder in the first degree or should have been acquitted on the theory of justifiable homicide; that as the grand jury indicted the accused for murder in the second degree he was exonerated of the charge of murder in the first degree and as the jury found his guilty of manslaughter he was acquitted of murder in the second degree; therefore the judgment should be reversed because the conviction cannot be sustained under the law and facts.

The proposition may be reduced to this: Assuming that the facts would support a charge of murder in the first degree, the accused should be acquitted because he was indicted for murder in the second degree and convicted of the offence of manslaughter.

No authority is cited in support of the proposition. The only case cited in a brief of twenty pages is that of Pinder v. State, 27 Fla. 370, 8 So. R. 837, to the proposition that in a trial of an indictment for murder in the first degree the

accused should be given the "benefit of the theory that the killing must have been unlawful or without a legally recognized excuse or justification in order to constitute the crime of murder or manslaughter."

The conviction in the Pinder case was reversed because of two errors, one was that the trial court in instructing the jury upon the subject of self defence misstated the law of excusable homicide by announcing that " 'it is necessary that the defendant should have perpetrated the act under the *well grounded belief, justified* by *the surroundings,* that it was necessary to take the life of the *person slain* in order to save his own life, or to prevent great bodily harm to himself at the time he fired the fatal shot.' " Pinder's defense was that he was shooting at some one else in self defense and accidentally killed Tillman. It was pointed out that the second erroneous feature of the charge consisted in depriving Pinder of the defense founded upon the theory that the killing of Tillman was unintentional and accidentally brought about by the excusable or justifiable defense of himself against impending danger from a third party.

There is nothing in the Pinder case analogous to the one at bar. We find nothing in the record to support the statement that the grand jury indicted Andrews for murder in the second degree. He was prosecuted upon information filed by the county solicitor. This observation is made not that we regard the fact as of any importance or that an indictment of a person for one offense is *ipso facto* an acquittal of such person of a more serious or higher degree of the offense charged.

. The facts in the case are not analogous to those existing in the Pinder case. In the case at bar the evidence fully justified the conviction of the accused upon the charge made

against him but he was found guilty of a lesser degree of homicide than that with which he was charged.

While manslaughter is not a degree of murder, it is a degree or grade of unlawful homicide. See Boyett v. State, 69 Fla. 648, 68 So. R. 931.

Upon a trial for murder in the first degree every grade of unlawful homicide is involved. See Ammons v. State, 88 Fla. 444, 102 So. R. 642; Potsdamer v. State, 17 Fla. 895; Rivers v. State, 75 Fla. 401, 78 So. R. 343; McCoy v. State, 40 Fla. 494, 24 So. R. 485; Green v. State, 43 Fla 556, 30 So. R. 656.

When the evidence justifies a verdict of murder in the first or second degree an unjustified verdict of murder in the third degree is not contrary to the evidence in the sense that a new trial must be granted. See Clemmons v. State, 43 Fla. 200, 30 So. R. 699.

It would be of no benefit to any person interested nor to the people at large to discuss the evidence in this case. It merely presents the case of a person more or less intoxicated going about with a pistol which from motives conjured up by disordered mental faculties he desires to exploit to the terror of others and the gratification of his own morbid sense of local importance. The result was the death of a citizen unlawfully killed by the "pistol toter."

We think the evidence amply sufficient to support the verdict and finding no error in the proceedings the judgment is affirmed.

WHITFIELD, AND BUFORD, J. J., concur.

BROWN, J., (Dissenting.)—While there was testimony sustaining the verdict of guilt, there was to my mind also testimony which if believed would have sustained a verdict of not guilty on the ground of self defense. It

was, therefore, a question for the jury to decide, under instructions by the court as to the law, and after a fair opportunity had been afforded to both the State and the defense to argue the case.

But it does not seem to me that the defendant was given that full and fair opportunity for argument which the law contemplates.

When it came time to argue the case, the acting solicitor stated that he would waive the opening argument. Defendant's counsel objecting to this course of procedure, the acting solicitor made the following statement to the jury as constituting his alleged opening argument:

"When I make my main argument after Judge Farris has made his argument I will endeavor by this evidence to show you that the State has met all the legal burdens as to proof in this case: That we have established by competent evidence all the material allegations of this information beyond and to the exclusion of every reasonable doubt, and that we have established by the evidence that on the date alleged in the information, the defendant, Ben Andrews, slew the deceased, Earl Brady Dyal, by an act imminently dangerous to another and especially to the said Earl Brady Dyal, and evincing a depraved mind regardless of human life and neither justifiable or excusable homicide, and that such slaying was second degree murder, and that is the verdict I shall, on behalf of the State, ask you on the evidence in this case to find when the case is finally submitted to you. With this statement of the position of the State in the matter I will leave it with you until Judge Farris has made his argument, when I shall then more fully present the evidence to you."

Counsel for the defendant excepted on the ground that by this statement the acting solicitor "had failed to outline to the jury in the proper form of argument the contentions of the State, he having the concluding argument, so that the defendant may have full opportunity through his counsel to reply to such arguments as may be made. We insist that the acting solicitor argue his case," etc. It think this exception was well taken, and that it raises a very important question.

This was made one of the grounds of the assignments of error, as well as of the motion for new trial, to which latter was appended as an exhibit and affidavit of counsel for defendant, in which it is further alleged that the acting solicitor, after counsel for defendant had made his argument, argued the case for more than an hour, and that his contentions were not justified by the evidence and could have been fully answered by counsel for defendant if he had been given an opportunity to do so; that the jury were misled by the concluding argument and reached an erroneous conclusion. Of course, this last clause was merely the opinion of counsel.

It must be admitted, however, that the so-called "opening argument" of the prosecuting attorney was not an argument at all, but was little more than an outline of the charge made in the indictment, together with the statement that the evidence submitted proved every material allegation thereof, and that he would on that evidence ask the jury to find the defendant guilty as charged.

In S. A. L. Ry. Co. v. Rentz, 60 Fla. 449, 54 So. R. 20, this Court, in an opinion by Justice HOCKER concurred in by all the members of the Court, said:

"When this case came up for argument the plaintiff's counsel, who had the opening and conclusion, in

his opening statement simply announced that the evidence sustained his case, and cited one authority to show that the allegation in the declaration as to the time of delivery of the mules to the initial carrier, was not an issue. Defendant's attorney requested the plaintiff's attorney to argue the evidence. Defendant's attorney also moved the referee to require plaintiff's attorney to argue the evidence and cite the law upon which he relied. This motion the referee denied, and the defendant's attorney excepted. It then appears from the record that defendant's attorney argued the law and facts from his standpoint. Then the plaintiff's attorney argued the case. Defendant's attorney then offered to reply to the argument of the plaintiff's attorney, and the latter objected, and his objection was sustained. These several rulings afford the basis for assignments of error. The plaintiffs in their brief seem to regard this as a very trifling matter indeed, and quote no authority to sustain these rulings. The defendant's attorneys in their brief argue mightily that defendant was deprived of its right to discuss the plaintiff's argument, but no authority whatever is cited. The writer has spent several days in examining this question, and his conclusion is, that while the authorities are not entirely harmonious, the procedure adopted by the plaintiff was unfair to the defendant. The very object of having attorneys is to aid courts in examining the law and in sifting evidence in order that justice may be administered according to law. The purpose of allowing the attorney on whom the burden lies to open and conclude is that in his opening address he shall fairly state his case—the particular evidence, and the law upon which he relies —so that the opposite attorney may have an oppor-

tunity to discuss his position. The attorney who has thus opened his case has an opportunity to reply to his adversary. The whole case is thus fairly presented to the tribunal which has to decide it. Of course no court can regulate with perfect exactness what a lawyer shall say in his opening address, but if he refuses to fairly open his case he should not be permitted to reply to his adversary; or if he is permitted to do so, then the opposite attorney should be permitted to reply to him. To countenance the method adopted in this case might lead to giving one party to a cause a very unfair advantage, and perhaps to injustice. We are not prepared to say, however, that the record in this instance sufficiently shows the arguments of plaintiff's attorney as to present reversible error, but we deem it proper to say we do not approve of the course which was pursued.''

See also in this connection, though not strictly in point, Huston v. Green, 91 Fla. 434, 108 So. R. 846, and Germak v. F. E. C. Ry. Co., 95 Fla. 991, 117 So. R. 391.

I think, in the light of this former utterance by this Court, the trial court erred in permitting, over defendant's protest, the method of argument which counsel for the State adopted in this case, and that such error was prejudicial and harmful in its nature and tendency, requiring a reversal of the judgment.

TERRELL, C. J., AND STRUM, J., concur.

## On Rehearing.

PER CURIAM.—On rehearing, a majority of the Court consider that the opinion, of Mr. Justice BROWN heretofore prepared and filed as a dissenting opinion upon the

original hearing of this cause and appearing in 126 So. R., pages 752-753, should be, and hereby is, approved and adopted as the opinion of the Court, and that this Court's previous judgment of affirmance should be set aside and the judgment of the court below should be now reversed for the reasons stated in such opinion. It is so ordered.

The questions decided are stated in the headnotes.

Judgment of affirmance set aside and judgment of trial court reversed, on rehearing.

TERRELL, C. J., AND WHITFIELD, STRUM, BROWN AND BUFORD, J. J., concur.